UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| MICHAEL ALLEN ATKINS | ) | | |
| | ) | | |
| | ) | | |
| v. | ) | No. | 1:11-cv-78/1:09-cr-95 |
| | ) | | *Judge Curtis L. Collier* |
| UNITED STATES OF AMERICA | ) | | |

### MEMORANDUM

Michael Allen Atkins ("Atkins") has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 350).[1] Atkins contends his sentence should be vacated because, *inter alia,* it was "outside" his guidelines range. The government has filed its response in opposition (Criminal Court File No. 365). After reviewing the record and the applicable law, the Court concludes Atkins' motion for equitable tolling will be **DENIED** since his § 2255 motion was timely filed (Criminal Court File No. 374), and because his § 2255 motion is without merit, it will be **DENIED** for the reasons set forth herein (Criminal Court File No. 350).

**I.  STANDARD OF REVIEW**

A sentence in a criminal case must be vacated if the Court makes a finding "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255(b).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994). When the alleged error is neither jurisdictional nor constitutional, then the alleged error must constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 348, (1994). The standard of review for nonconstitutional claims is that claims not raised at trial or on direct appeal are waived for collateral review under § 2255 unless the errors amount to a denial of due process. *Grant v. United States*, 72 F.3d 503 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). Society has a substantial interest in the finality of judgments, therefore, collateral relief is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process. *Id.* at 506. "Nonconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver." *Id.*

An evidentiary hearing is unnecessary if there are no material issues of fact in dispute or if the record conclusively demonstrates the movant is not entitled to relief under § 2255. An evidentiary hearing is not required if the movant's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485 (6th Cir. 2008), *available at* 2008 WL 2246367; *Valentine v. United States*, 488 F.3d 325 (6th Cir. 2007). The movant bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. Mere vague conclusions, which are not substantiated by allegations of specific facts with some probability of verity, are not enough to warrant an evidentiary hearing. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972; *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). Under Rule 8 of the Rules

Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the record whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. The Court finds it unnecessary to hold an evidentiary hearing in the present case.

**II.     Procedural Background**

On May 27, 2009, the Grand Jury indicted Atkins and eleven others in a sixty-nine-count indictment (Criminal Court File No. 1). Atkins was named in eight counts in relation to manufacturing and distributing methamphetamine (Criminal Court File No. 1). The government filed notice of intent to enhance Atkins' sentence pursuant 21 U.S.C. § 851 on October 7, 2009 (Criminal Court File No. 177). Subsequently, on October 28, 2009, pursuant to a plea agreement, Atkins entered a guilty plea to a lesser-included offense of Count One, that is, a conspiracy to manufacture and distribute fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(B) (Court File No. 185, 188, & 189). The Court sentenced Atkins to 80 months on Count One and dismissed the other counts on motion of the government (Criminal Court File Nos. 329, 332). Atkins did not pursue a direct appeal. Rather, he sent a letter on February 24, 2011 (Criminal Court File No. 346), which the Court construed as a request to have his sentenced reviewed, and therefore, directed the clerk to send Atkins the proper forms to file a motion pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 349). Atkins subsequently filed a timely § 2255 motion on March 31, 2011 (Criminal Court File No. 350).[2]

---

[2]     The government, noting Atkins was sentenced on March 18, 2010, claims his § 2255, which was docketed by the Clerk on April 6, 2011, is untimely filed (Criminal Court File No. 365). The government is incorrect. Although Atkins was sentenced on March 18, 2011, his judgment of

3

Atkins alleges the following: (1) his sentence is outside of his guidelines, (2) he has not received confirmation that a Rule 35 motion has been filed on his behalf and counsel advised he would receive half off of his sentence, (3) he was told his federal time would run with his state time, and (4) his sentence is unconstitutional due to the cumulation of the first three alleged errors.

### III. Factual Background

The following pertinent facts are taken from "The Offense Conduct" section of the Presentence Investigation Report ("PSR") prepared by the United States Probation Office:

> 77. In 2008, agents from the Georgia Bureau of Investigation (GBI) and the Drug Enforcement Administration (DEA) began investigating a methamphetamine production and trafficking organization in the Eastern District of Tennessee and the Northern District of Georgia. The individuals involved were producing "home-made" methamphetamine using precursor chemicals provided by members of the organization. Various members of the organization engaged in the "smurfing" process, making regular and frequent trips to commercial businesses to purchase the materials necessary to cook methamphetamine. When locally produced methamphetamine slowed, the organization had members whose primary responsibility was to procure and redistribute so-called "ice" methamphetamine, largely from sources of supply in the state of Georgia. Investigators determined that the conspiracy began in 2006 and continued into 2009.
>
> 78. Defendant Michael Atkins entered into an agreement with others to manufacture methamphetamine and his role consisted primarily of purchasing precursor

---

conviction was not entered until March 25, 2010, and it did not become final until April 8, 2010, after the expiration of time for filing a direct appeal (Criminal Court File No. 332). Atkins "declare[d] . . . under penalty of perjury that . . . this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on March 31, 2011." (Criminal Court File No. 350, p. 13). Therefore, pursuant to the mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 270-71 (1988), it is deemed filed on March 31, 2011. Atkins judgment was entered on March 25, 2010 (Criminal Court File No. 332). Atkins did not pursue a direct appeal, thus his judgment of conviction became final on the date on which the time for filing an appeal expired. *United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002). The 2009 amendments to the Federal Rules of Appellate Procedure provides that Atkins had 14 days to file an appeal. Atkins judgment of conviction was entered on March 25, 2010, which means his conviction became final fourteen days later–April 8, 2010. The one-year statue of limitation for filing a § 2255 motion began on April 9, 2010, and expired on or about April 8, 2011. Therefore, using either March 31, 2011, or April 6, 2011, the motion is timely.

4

chemicals, such as pseudoephedrine, for use in the manufacture of methamphetamine.

79. On April 17, 2008, investigating agents obtained a search warrant for Mr. Atkins' home in Walker County, Georgia. When that warrant was executed, law enforcement discovered a methamphetamine laboratory on the premises. In addition, business records obtained by the government revealed that the defendant made voluminous purchases of pseudoephedrine in the Eastern District of Tennessee between November of 2006 and December of 2007. The business records establish that Mr. Atkins purchased more than 54 grams of pseudoephedrine during that time frame.

80. Agents interviewed at least eight other witnesses and co-conspirators involved in the instant offense and those individuals confirmed that Mr. Atkins was a knowing and voluntary participant in the conspiracy. The statements made by these individuals generally corroborated one another.

81. Based upon their investigation, agents have determined that Mr. Atkins was directly or indirectly personally responsible for the manufacture and distribution of in excess of 50 grams of methamphetamine mixture during the time frame of the conspiracy. Further, during the time frame of the conspiracy, the defendant purchased at least 54 grams of pseudoephedrine. The Drug Equivalency Tables at USSG §2D1.1 equate one gram of pseudoephedrine to 10 kilograms of marijuana. Using that formula, the defendant is responsible for the equivalent of 540 kilograms of marijuana. Pursuant to USSG §2D1.1(c)(6), at least 400 kilograms, but less than 700 kilograms, of marijuana will establish a base offense level of 28.

(PSI).

## IV. ANALYSIS

Although Atkins does not specifically allege he received ineffective assistance of counsel in relation to his claims, in the supporting facts he mentions counsel's advice. To the extent, he is attacking his sentence and not counsel's advice or performance during sentencing, he has procedurally defaulted the claims as they should have been raised on direct appeal. Challenges that should have been raised on direct review but were not raised will not be addressed by habeas courts unless cause is shown for the tardy challenge and "actual prejudice" resulting from the error is

5

demonstrated, *United States v. Frady*, 456 U.S. 152, 167-68 (1982); or that the movant is actually innocent of the crime. *See Bousley v. United States*, 523 U.S. 614 (1998). To the extent Atkins is attacking his sentence, he is not entitled to relief as he alleges neither cause and prejudice nor actual innocence.

However, because he mentions counsel's advice, the Court discerns he is claiming counsel's advice and representation in relation to his sentence were ineffective. To establish ineffective assistance of counsel a movant must demonstrate, as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), two essential elements: (1) counsel's performance was deficient, i.e., below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88. In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992). Atkins submits several claims of ineffective assistance of counsel which the Court will address separately.

At the outset, however, the Court notes Atkins has not met his burden of proving prejudice i.e., a reasonable probability that he would have gone to trial, as he has not even made an allegation

6

to that effect, much less presented argument with factual assertions demonstrating a reasonable probability but for counsel's alleged deficient performance, he would have proceeded to trial. This conclusion is further supported by the relief Atkins requests, i.e., resentence him to the bottom of a guideline range of 46-78 months, give him a Rule 35 reduction, and run his federal and state sentence concurrently. Accordingly, Atkins has not demonstrated he suffered any prejudice, or, as explained below, that counsel's performance was deficience.

     **A.**     **Unconstitutional Sentence**

In his first claim, Atkins alleges he was sentenced in violation of his constitutional rights when the Court sentenced him outside his guidelines to a term of 80 months in the custody of the Bureau of Prisons. Specifically, Atkins claims counsel advised him he would be sentenced at the bottom end of his "PSI" guidelines which Atkins incorrectly claims were 46 to 78 months (Criminal Court File No. 350).

In this case, Atkins pleaded guilty to conspiracy to manufacture, distribute, and possess 50 or more grams of a methamphetamine mixture. Because he had a prior conviction for a felony drug offense, he was facing a minimum mandatory sentence of ten years and up to a life sentence pursuant to the statute. 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Atkins was advised by the Court on more than one occasion that he was facing a mandatory minimum sentence of ten years, a sentence which he assured the Court he understood he was facing. Although the guidelines were calculated at 63 to 78 months imprisonment based on a total offense level of 25 and a criminal history category of II, those
were not Atkins' guidelines because the statute required a minimum term of ten years imprisonment. Therefore, Atkins' guideline term was effectively 120 months.

7

The Court, however, departed from the guideline range based on the filing of a § 5K1.1 motion by the government advising the Court of Atkins' substantial assistance. The Court concluded his cooperation warranted a reduction to the range of 78 to 97 months which is found under offense level 27, criminal history category II. The Court ultimately sentenced Atkins to the low end of those guidelines i.e., an 80 month term of imprisonment (Criminal Court File No. 361, pp. 9, 19).

Although both the Sentencing Guidelines and the statutory mandatory minimums are involved in determining punishment, a mandatory minimum remains unaltered by Guideline provisions. Indeed, it is irrefutable that where the Sentencing Guidelines and the statutory mandatory minimums are in conflict, the statue controls. *See United States v. Jones,* 569 F.3d 569, 572 (6th Cir. 2009) ("When the statutory-minimum sentence is greater than the top of the guideline range calculated by the sentencing court, the statutory minimum effectively trumps the guideline range and becomes the 'guideline sentence.' USSG § 5G1.1(b)."); *United States v. Garcia-Ortiz,* 528 F.3d 74, 84–85 (1st Cir.2008) ("The Guidelines cannot supersede the controlling federal statute"); *United States v. Eggersdorf*, 126 F.3d 1318, 1320 (11th Cir.1997) ("The statute controls in the event of a conflict between the guideline and the statute."); *United States v. Sharp*, 883 F.2d 829, 831 (9th Cir.1989) ("[W]hen a statute requires a sentence different than set by the guidelines, the statute controls."). The Sentencing Guidelines acknowledge this order. *See* USSG § 5G1.1 ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence"). Therefore, Atkins sentence was properly based on the statutory mandatory minimum sentence.

Here, not only is Atkins' sentence constitutional, his claim counsel told him he would be

8

sentenced to the lower end of his "PSI" guidelines is clearly refuted by his plea agreement and sworn statements–under oath and penalty of perjury–during his plea hearing (Criminal Court File No. 364). Nevertheless, even if counsel told Atkins he would be sentenced at the bottom end of this "PSI" guidelines range, this alleged misinformation was corrected by Atkins' plea agreement as well as the Court's colloquy with him during his plea hearing. The plea hearing transcript clearly reflects any incorrect advice regarding Atkins' sentence was corrected when the Court carefully explained to Atkins, and Atkins unequivocally acknowledged he understood, that his sentence would be driven by the mandatory statutory minimum of ten years (Criminal Court File No. 189; Criminal Court File No. 364, p. 16, 18).

Specifically, Atkins signed his plea agreement prior to entry of his guilty plea, and the agreement clearly notified him that because he had a prior felony drug conviction, he was facing a minimum mandatory sentence of ten (10) years up to a maximum of life; supervised release for at least eight (8) years; fine up to $4,000,000.00; any lawful restitution; and a $100.00 special assessment (Criminal Court File No. 189, p. 1). Moreover, during his plea hearing and prior to accepting his guilty plea, the Court had the government advise Atkins he was facing a sentence of ten years to life, and he acknowledged he understood the penalties he was facing, as well as all of the possible consequences of his plea (Criminal Court File No. 364, pp. 16, 18).

The Court explained to Atkins' that his plea could possibly affect the state sentence he was serving, and Atkins acknowledged he understood such a possibility existed (Criminal Court File No. 364, p. 20). The Court further advised Atkins he could be sentenced to the maximum penalty of life. Further, Atkins was specifically advised his sentence might be different from any estimated sentence counsel may have discussed with him. Atkins acknowledged his understanding his sentence could

9

be different than what counsel may have estimated for him and that the Court could depart upward or downward from his sentencing range (Criminal Court File No. 364, pp. 21-22).

Atkins was clearly placed on notice in his written plea agreement and during his plea hearing that a statutory mandatory minimum sentence of ten years applied to his offense. Moreover, Atkins, who is a high school graduate, acknowledged during his plea colloquy that he understood the mandatory minimum sentence was ten years. Atkins expressed no confusion or reservations about the mandatory minimum sentence he was facing and did not mention, as he now alleges, that counsel advised him he would be sentenced at the bottom end of his "PSI" guidelines. Atkins sworn statements during his plea hearing, which carry great weight, contradict his current claims. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Weighing Atkins factually unsupported assertions in his § 2255 motion against the evidence of his sworn statements during his plea colloquy, the Court concludes his oral sworn statements during his plea hearing undermine his alleged understanding he would be sentenced at the bottom end of his "PSI" guidelines.

Accordingly, because Atkins sentence was not imposed in violation of the Constitution, any law of the United States, or in excess of the maximum authorized by law, and he has not demonstrated counsel performed deficiently and that as a result he was prejudiced, relief will be **DENIED** on this claim.

### B. Rule 35 Motion

Atkins' second claim is confusing pled as he claims he never received confirmation he would receive a Rule 35 motion for agreeing to testify in a trial against his codefendant. In addition, he claims counsel advised him he would receive "half of my time off." (Criminal Court File No. 350).

10

First, Atkins has not received notice a Rule 35 motion was filed on his behalf for agreeing to testify against his codefendant because, as the Court's CM/ECF docket reflects, no such motion has been filed. What was filed on Atkins' behalf for his substantial assistance was a § 5K1.1 motion filed by the government because Atkins was willing to testify against his co-defendants which convinced them to plead guilty rather than go to trial (Criminal Court File No. 361, p. 8). Atkins was rewarded for his substantial assistance when he was sentenced to 80 months imprisonment, which is well below the 120 month mandatory minimum sentence he was facing.

Atkins' factually unsupported claim that counsel advised him he would receive "half of my time off" for his cooperation is clearly refuted by his statements–under oath and penalty of perjury–to the Court during his rearraignment. Atkins was notified and he acknowledged during his rearraignment and by signing his plea agreement that he was facing a minimum mandatory term of ten years up to a maximum of life; that the Court could impose any lawful term of imprisonment up to the statutory maximum; the government had the sole discretion of whether to notify the Court of Atkins' cooperation, and any estimates or predictions made to him by defense counsel or any other person regarding his potential sentence are not binding on the Court (Criminal Court File Nos. 189–Plea Agreement; 364–Rearraignment Transcript, pp. 10, 16, 18). In addition, Atkins was notified and he acknowledged he understood that regardless of what the government recommends, the Court could impose a sentence that was more severe than what he anticipates (Criminal Court File No. 364, p. 12).

As the Supreme Court of the United States instructed in *Blackledge v. Allison*:

11

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 74.

Atkins allegations are unsupported with any specific facts. Atkins has not identified the exact terms of the alleged promise by counsel, when and where the promise was made, and the precise identity of everyone that was present when the alleged promise was made. Consequently, absent independent evidence that disputes Atkins' testimony which he gave under oath and penalty of perjury during his rearraignment, his claim that counsel told him he "would receive half of my time off" fails. Accordingly, because Atkins has failed to submit any credible, independent evidence which would dispute his sworn statements during his rearraignment, he has failed to demonstrate he received ineffective assistance of counsel in this regard and relief will be **DENIED**.

### C. Concurrent Sentences

As the Court discerns Atkins third claim, he alleges counsel, an unidentified federal officer, and the "D.A." informed him his time would start at the time of his arrest and it would run with his state time. Contrary to Atkins' allegations, neither the written plea agreement nor the transcript of the rearraignment hearing refer to his federal sentence running concurrent with his state sentence and both refute this claim. First, nothing in the plea agreement indicates this promise was made to Atkins as there is absolutely no reference to his federal sentence running concurrently with his state sentence. Indeed, Atkins' plea agreement, which he signed, specifies the following: "No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by counsel or any other

12

person regarding the potential sentence in this case are not binding on the Court. The defendant *understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties*." (Criminal Court File No. 189, p. 6, ¶ 11) (emphasis added).

Second, in addition to there being absolutely no reference in Atkins' plea agreement that his federal sentence will run concurrently with his state time or an agreement that his federal sentence would begin to run on the date of his arrest and concurrently with his state sentence, paragraph fourteen of Atkins' plea agreement refutes this claim, as it provides,

> 14. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and *there are no other agreements, promises, or undertakings between the defendant and the United States. The parties understand and agree that the terms of the this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void*.

(Criminal Court File No. 189, p. 8) (emphasis added).

In addition, during the rearraignment, there was no discussion about Atkins' federal sentence running concurrently with his state sentence. The first reference to Atkins state sentence was when counsel told the Court, "Mr. Atkins is currently serving a sentence from the Georgia Department of Corrections, so he's not on probation, he's serving a sentence." (Criminal Court File No. 364, p. 19). The Court explained: "Mr. Atkins, I guess you need to know that it's a possibility it could affect something related to your sentence, but I don't know what that would be since you're currently serving a sentence, but I suppose it could affect whether or not you get parole from your state institution." (Criminal Court File No. 364, p. 20). Atkins' acknowledged he understood.

13

During his sentencing hearing, there was no mention of Atkins' federal sentence running concurrent with his state sentence, and that would have been the time for Atkins' to raise the allegations he raises now (Criminal Court File No. 361). As previously noted, "[s]olemn declarations in open court carry a presumption of verity, forming a formidable barrier in any subsequent collateral proceeding." *Blackedge v. Allison*, 431 U.S. at 74. Once again, Atkins has failed to bolster his bald allegation with any facts to support his factually baseless claim that his attorney, "the federal office and the D.A. informed [him] they would start [his] time at the time of [his] arrest and it would run with [his] state time." (Criminal Court File No. 350).

This factually baseless claim violates Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Rule 2(b)(2). Atkins has not precisely identified the "federal office" or "D.A." who allegedly made this promise. Moreover, he has not shown the exact terms of the alleged promise, and when and where the promise was made. Atkins' failure to support this allegation with independent evidence that disputes his plea agreement and the testimony which he gave during his rearraignment, has resulted in an inadequate claim. Because Atkins has failed to provide any factual support and come forward with any credible, independent evidence which would dispute his signed plea agreement and testimony under oath and penalty of perjury during his rearraignment, his claim fails. Accordingly, Atkins will be **DENIED** relief on the claim he was told his federal sentence would start at the time of his arrest and run concurrently with his state sentence.

### D. Cumulative Error Claim

In his fourth claim, as the Court understands it, Atkins claims that a cumulation of the above alleged errors have resulted in a constitutional error. Thus, Atkins claims that the totality of the

14

alleged errors require the granting of the § 2255 motion. None of Atkins other assertions constitutes ineffective assistance of counsel under *Strickland*. Thus, Atkins has been unable to establish any deficient conduct or resulting prejudice as to even one of his allegations. Accordingly, because meritless claims or claims that did not result in prejudice cannot be cumulated, Atkins has failed to demonstrate he suffered from cumulative errors of a constitutional dimension. *See Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005) ("But we have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief"). Accordingly, relief will be **DENIED** on Atkins' cumulative error allegation.

## V. Conclusion

For the reasons set forth above, the Court concludes Atkins is not entitled to any relief under 28 U.S.C. § 2255 as his sentence is not in violation of the Constitution or laws of the United States. A separate judgment will enter **DENYING** Atkins's § 2255 motion (Criminal Court File No. 350).

An appropriate judgment will enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

.